UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BRENDA R BLALOCK, ET AL. | CASE NO. 19-cv-1160 |
| -vs- | JUDGE DRELL |
| UNION PACIFIC RAILROAD CO | MAGISTRATE JUDGE PEREZ-MONTES |

## AMENDED RULING AND ORDER

In its ruling and order of February 1, 2022 (Doc. 51) certain errors and omissions have been noticed. That Ruling and Order is withdrawn. This Amended Ruling and Order is substituted.

Before the Court is a Motion for Summary Judgment filed by defendant Union Pacific Railroad Co ("UPRR"). (Doc. 39). For the following reasons the motion is **GRANTED**.

### I. BACKGROUND

Leo Blalock ("Leo") was a chronic alcoholic with liver issues, and before 1:00 PM on June 27, 2019, Leo drank two quarts of beer. (Doc. 39-3 p 5; Doc. 39-4 p 22). At approximately 1:00 PM on June 27, 2019, Brenda Blalock ("Brenda") called 911 after finding her husband "as white as a sheet" and unresponsive. (Doc. 39-3 p 6; Doc. 39-4 p 3). The Bunkie Fire Department arrived first shortly followed by Acadian Ambulance. (Doc. 39-3; Doc. 39-6 p 4; Doc. 39-8 p 7). During approximately the next forty-five minutes, Leo came in and out of consciousness several times, vomited blood, and was ventilated via a bag-mask resuscitator. (Doc. 39-4; Doc 39-6; Doc 39-8).

When he was conscious, he repeatedly refused transportation to the hospital, but at approximately 1:58 PM, he acquiesced to seek treatment within a hospital. (Doc. 39-3 p 7; Doc. 39-4 p 20; Doc. 39-6 p 10; Doc. 39-8 pp 5, 8).

Emergency responders determined that treatment at the local Bunkie General Hospital was not an option, that Leo required transportation to Rapides Regional Medical Center in Alexandria, and that an air lift would be the fastest option to transport Leo to Rapides Regional Medical Center. (Docs. 39-6 pp 6-8, 39-8 p 15). Nonetheless, the closest helicopter pad was at Bunkie General Hospital making it the initial rendezvous point. (Doc. 39-8 p4). However, minutes before Leo acquiesced in allowing treatment within a hospital, a train belonging to UPRR came to a stop on a set of railroad tracks between Leo and Bunkie General Hospital. (Doc. 39-9 p11). As a result, a decision was made to intercept the helicopter by heading north on Highway 71. (Docs. 39-6 pp 6-8, 39-8 p 15). The newly chosen location was closer for the ambulance and would shorten the helicopter's flight to Rapides Regional Medical Center. (Doc. 39-6 p 13; Doc. 39-8 p 12). The ambulance arrived at the new location less than a minute before the helicopter. (Doc. 39-6 p 13). After preparing Leo for flight, the helicopter transported Leo to Rapides Regional Medical Center where he eventually died.

Brenda and family members Brandy Kidder, William Blalock, and Michael Blalock (collectively "Plaintiffs") filed this tort suit against UPRR in the Louisiana 12th Judicial District in Avoyelles Parish. (Doc. 1). Defendants removed to federal

court and filed the instant motion for summary judgment claiming preemption and failure to show cause or contribution. (Docs. 1, 39).

## II. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Liberty Lobby, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged

by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Liberty Lobby, 477 U.S. at 247.

### III. LAW AND ANALYSIS

Despite its compelling nature, we decline to reach the merits of UPRR's claim that Plaintiffs have failed to show UPRR caused or contributed to the death of Leo because UPRR prevails on its first claim that the suit is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, *et seq.*

The Fifth Circuit has on several occasions held that § 10501(b) of the ICCTA preempts laws and remedies that have the effect of managing or governing rail transportation. Ezell v. Kansas City S. Ry. Co., 866 F.3d 294, 298-300 (5th Cir. 2017); Elam v. Kansas City S. Ry. Co., 635 F.3d 796, 804-'08 (5th Cir. 2011); Franks Inv. Co. LLC v. Union Pac. R. Co., 593 F.3d 404, 408-'15 (5th Cir. 2010); Friberg v. Kansas City S. Ry. Co., 267 F.3d 439, 442-'44 (5th Cir. 2001).

Thus, Plaintiffs' negligence *per se* claim for UPRR's violation of La. R.S. 48:391, making unlawful the voluntary obstruction of railroad crossings for a period in excess of twenty minutes, and UPRR's violation of Bunkie Local Ordinance § 21:10, making unlawful the same but for a period in excess of five minutes, is preempted because both La. R.S. 48:391 and Bunkie Local Ordinance § 21:10 attempt to manage or govern rail transportation. See, e.g., Elam, 635 F.3d at 807-'08 (holding that a

negligence *per se* claim based upon a violation of Mississippi Anti-Blocking Statute was preempted by ICCTA); Ezell, 866 F.3d at 299 ("We agree with the district court that Elam squarely forecloses [plaintiff]'s negligence *per se* claim based on the Mississippi Anti–Blocking Statute."). Similarly, federal and state remedies that have the effect of regulating rail transportation are also preempted. Franks, 593 F.3d at 410; Elam, 635 F.3d at 807 ("...§ 10501(b) completely preempts state laws (and remedies based on such laws) that directly attempt to manage or govern a railroad's decisions in the economic realm.") Accordingly, all of Plaintiffs' claims that the blocking of the rail crossing caused or contributed to Leo's death are preempted.

Finally, Plaintiffs' negligence claims based upon UPRR's alleged violation of its own internal operating procedures are also preempted. Ezell, 866 F.3d at 299 ("Our analysis in Elam makes clear that [plaintiff]'s blocking claim based on [defendant]'s internal operating rules is preempted by the ICCTA as well.").

## IV. CONCLUSION

For the reason's discussed above, UPRR's motion for summary judgment, (Doc. 39), is **GRANTED**, dismissing all of Plaintiffs' claims against Defendant UPRR **with prejudice**.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 24th day of February, 2022.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT